## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRIEDMAN'S INC., et al., | ) | Case No. 09-10161 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| FRIEDMAN'S INC., | ) | |
| | ) | |
| Debtor in Possession, | ) | |
| | ) | |
| v. | ) | Adv. No. 09-50364 (CSS) |
| | ) | |
| ROTH STAFFING COMPANIES, L.P., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### OPINION[1]

| | |
|---|---|
| STEVENS & LEE, P.C. | COOCH AND TAYLOR, P.A. |
| John D. Demmy | Susan E. Kaufman |
| Maria Aprile Sawczuk | The Brandywine Building |
| 1105 N. Market Street, 7th Floor | 1000 West Street, 10th Floor |
| Wilmington, DE 19801 | Wilmington, DE 19899-1680 |
| - and - | -and- |
| Nicholas F. Kajon | Bradley D. Blakeley |
| 485 Madison Avenue, 20th Floor | Blakeley & Blakeley LLP |
| New York, NY 10022 | 4685 MacArthur Court, Suite 421 |
| | Newport Beach, CA 92660 |
| | |
| Counsel for Friedman's Inc. | Counsel for Roth Staffing Companies, L.P. |

Dated: November 30, 2011

Sontchi, J. _____

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## INTRODUCTION

The issue before the Court is narrow and straightforward. The debtor made a preferential payment to a creditor. Subsequently (but prior to the bankruptcy), the creditor provided new value to the debtor for which the creditor was not paid, resulting in a reduction of the creditor's preference liability under the "subsequent new value" defense codified in section 547(c)(4) of the Bankruptcy Code. After the filing of the bankruptcy, the debtor sought and received Court approval to pay the creditor-as an administrative claim-a portion of the pre-petition, unsecured claim owed to it by the debtor.  The debtor received Court approval to pay the creditor and did so.

The question is whether the post-petition payment of a portion of the unpaid, pre-petition claim relates back to the preference period.  If so, the creditor's subsequent new value defense is reduced and, thus, the creditor's preference liability is increased. The debtor/plaintiff argues that the post-petition payment increases the creditor's preference liability.  Of course, the defendant/creditor argues the opposite.

Applying Third Circuit law, the Court holds that the filing of the bankruptcy "fixes" the preference analysis as of the petition date.  Thus, neither the post-petition provision of new value by the creditor nor the post-petition payment of unpaid, pre-petition new value affects the preference calculation.   The motion for summary judgment will be denied.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. § 1409.

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts are undisputed.  On January 22, 2008 (the "Petition Date"), an involuntary Chapter 7 case was commenced against Friedman's Inc.[2]  Prior to the Petition Date, Roth Staffing Companies, L.P. ("Roth") provided staffing services for Friedman's Inc. During the preference period, Friedman's Inc. paid $81,997.57 to Roth.[3] Subsequently, but prior to the bankruptcy, Roth provided $100,660.88 of services to Friedman's Inc. for which Roth was not paid.

On or about the Petition Date, Friedman's Inc. filed a first-day motion requesting authorization to pay Roth's pre-petition unsecured claim.  In support of the motion, Friedman's Inc. asserted that its employees, including Roth's staffers, needed to be paid immediately or else Friedman's Inc. would face an "epidemic of Employee departures" or suffer from a "significant deterioration in morale...[with] a devastating impact on the Debtors, their customers, the value of their assets and business and their ability to reorganize."[4]  The Court approved the Wage Motion, authorizing Friedman's Inc. to

---

[2] On January 28, 2008, the involuntary chapter 7 case was converted to a voluntary chapter 11 case.

[3] Those payments were made from November 1, 2007 through January 4, 2008.

[4] Motion of the Debtors and Debtors in Possession for an Order Authorizing the Debtors to pay Pre-petition Wages, Compensation and Employee Benefits Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, Case No. 08-10161, Bankr. D.I. # 26 (the "Wage Motion").

pay Roth for its pre-petition staffing services.  Friedman's Inc. paid $72,412.71 to Roth under the order approving the Wage Motion.

In February 2009, Friedman's Inc. filed a complaint against Roth seeking to recover $81,997.57 as a preference. Friedman's Inc. has filed a motion seeking the entry of partial summary judgment on its behalf, arguing that the post-petition payment of $72,412.71 to Roth under the Wage Motion reduced the amount of subsequent new value available as an affirmative defense under section 547(c)(4).  More specifically, Friedman's Inc. argues that the post–petition payment relates back to the preference period and reduces the amount of Roth's subsequent new value defense from $100,660.88 to $28,248.17, leaving a preference claim of $53,749.40.[5]

## LEGAL DISCUSSION

### A.    Summary Judgment Standard

The standard governing a motion for summary judgment is well-established. Suffice it to say that Rule 7056 of the Federal Rules of Bankruptcy Procedure directs that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[6] There is no dispute that this matter is ripe for summary judgment.

---

[5] For purposes of this summary judgment motion, the parties do not dispute that Friedman's Inc. has established its *prima facie* case under section 547(b) of the Code.

[6] Fed.R.Bankr.P. 7056.

**B.      Setting The Table**

     *(i)      What Is A Preference?*

Congress established section 547 of the Code to prevent creditors from grabbing assets from a debtor when bankruptcy is on the horizon. A preference, in simplest terms, is an eve-of-bankruptcy transfer to a creditor.  The creditor that receives a preferential payment recovers 100% on its claim where, in all likelihood, other unsecured creditors receive less. Section 547 is designed to prevent a race to the debtor's assets and to preserve the integrity of bankruptcy's collective proceeding.[7]  The six requirements that a trustee must establish to make a preference voidable are: (1) a transfer is made; (2) on account of an antecedent debt; (3) to or for the benefit of the creditor; (4) while the debtor was insolvent; (5) within 90 days of the filing of the petition; (6) that left the creditor better off than it would have been if the transfer had not been made and it had asserted its claim in a chapter 7 liquidation.[8]

     *(ii)      The Subsequent New Value Defense*

A preference defendant may invoke the "subsequent new value" defense  under section 547(c)(4) to limit or eliminate its liability under section 547(b).  Section 547(c)(4) specifically provides that "[t]he trustee may not avoid under this section a transfer...to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor...on account of which new value the debtor

---

[7] *See* Thomas A. Jackson, THE LOGIC AND LIMITS OF BANKRUPTCY LAW 122-150 (1st ed. 1986).

[8] 11 U.S.C. §547 (b)

did not make an otherwise unavoidable transfer to or for the benefit of such creditor."[9]

"New value" is defined under section 547(a)(2) as "money or money's worth in goods, services, or new credit...that is neither void nor voidable by the debtor or the trustee under any applicable law."[10]

The subsequent new value defense is intended to encourage creditors to work with companies on the verge of insolvency. In addition, it is designed to ameliorate the unfairness of allowing the trustee to avoid all transfers made by a debtor to a creditor during the preference period without giving any corresponding credit for advances of new value that benefitted the debtor.[11]

In this case it is undisputed that Roth received preferential payments totaling $81,997.57. Subsequently (but prior to the bankruptcy filing), Roth provided "new value" to Friedman's, Inc., for which it was not paid, in the amount of $100,660.88. As a result, as of the date of the filing of bankruptcy, Roth had no preference exposure because it had provided subsequent new value in excess of the preferential payments it had received.

### (iii)    Payment Of Pre-Petition Claims Outside A Plan

Normally, a debtor only pays pre-petition, unsecured claims through a confirmed plan of reorganization. However, most courts will allow such payments under the "doctrine of necessity," if the debtor establishes that in its business judgment

---

[9] 11 U.S.C. § 547(c)(4).

[10] 11 U.S.C. §547(a).

[11] See n. 7 supra.

making such payments is critical to the survival of the debtor's business.[12]  Put simply, "[t]he 'doctrine of necessity' stands for the proposition that a bankruptcy court may allow payment outside of a plan of reorganization on account of a pre-petition obligation where such payment is critical to the reorganization process."[13]

### C. The Parties' Plain Meaning Arguments

Recall that the issue before the Court is whether the post-petition payment of pre-petition new value affects the preference defense.  The parties disagree as to whether the calculation is "fixed" on the petition date or remains subject to post-petition events such as the payment made to Roth under the Wage Motion.  Both parties rely on the "plain meaning" of the statute in support of their argument.  Neither interpretation, however, holds water.

Section 547(b) provides that "the **trustee** may avoid any transfer of an interest of the **debtor** in property...for or on account of an antecedent debt owed by the debtor...made while the **debtor** was insolvent."[14]  Section 547(c)(4) provides that the "**trustee** may not avoid under this section a transfer...to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit

---

[12] *See Miltenberger v. Logansport Ry.*, 106 U.S. 286, 311 (1882) .

[13] *In re Enron Corp.*, 2003 WL 1562202 at *20 (Bankr. S.D.N.Y. 2003).  There is a spirited academic and judicial debate as to whether a bankruptcy court may allow payment outside of a plan of reorganization on account of a pre-petition claim and, if so, the source of that authority.  *See generally, In re Kmart Corporation*,  359 F.3d 866 (7th Cir. 2004).  The Court need not weigh in on this issue, however, as neither party has challenged the Court's authority to allow the payment under the Wage Motion.

[14] 11 U.S.C. §547(b) (emphasis added).

of the **debtor**…on account of which new value the **debtor** did not make an otherwise unavoidable transfer to or for the benefit of such creditor."[15]

Roth argues that "debtor" refers exclusively to the pre-petition entity. If so, since section 547(c)(4) specifies that new value must be to or for the benefit of the debtor, and new value cannot have been paid for by the debtor, the preference calculation is fixed on the petition date when the debtor ceases to exist.[16] Roth further argues that had Congress intended §547(c)(4)(B) to incorporate post-petition payments into the subsequent new value defense calculations, it could have defined what constitutes a payment of on account of new value as "... an otherwise unavoidable transfer of an interest of the **estate in property** to or for the benefit of such creditor."[17] Since Congress used "debtor" rather than "estate," Roth concludes that fixing the preference calculation on the Petition Date is required by the plain language of § 547(c)(4)(B).[18]

Friedman's also relies on an analysis of the statute's plain meaning in rejecting Roth's reading. Section 101(13) of the Code defines a debtor as a "person or municipality concerning which a case under this title [11] has been commenced."[19] Friedman's argues that the use of "has been commenced" means that there is no debtor under the Code's definition until a case has been filed. In other words, since under the Code's definition no debtor exists until the bankruptcy petition is filed, a debtor cannot

---

[15] 11 U.S.C. §547(c)(4) (emphasis added).

[16] *In re Phoenix Restaurant Group, Inc. v. Ajilon Professional Staffing LLC*, 317 B.R. 491, 496-97 (Bankr. M.D. Tenn. 2004).

[17] *See id.* at 496-97.

[18] *Compare* 11 U.S.C. § 547 *with* 11 U.S.C. § 549, where Congress *does* use the word "estate."

[19] 11 U.S.C. §101(13). A "person" includes individuals, partnerships and corporations. *Id.* at §101(41).

be a pre-petition entity, let alone be an exclusively pre-petition entity.   Therefore, Friedman's argues, the use of the word "debtor" cannot be a limiting factor that requires fixing the preference calculation on the petition date.

Both arguments fail in large part due to the fact that they are based upon a fallacious assumption, i.e., that the debtor and the debtor in possession are separate entities.   That is incorrect.   The "debtor" is a corporate entity and exists both pre-petition and post-petition.   Consider the following statement, "Willie Mays is a person that has been elected into the Hall of Fame."   Did Willie Mays come into existence the moment  he was elected to the Hall of Fame (i.e., Friedman's position that the debtor doesn't exist before the bankruptcy filing)?   Of course not.   Did Willie Mays cease to exist upon election into the Hall of Fame (Roth's position that debtor ceases to exist on the petition date)?   Of course not. Under the rules of English grammar and syntax, the phrase "that has been elected" in this example is not a temporal restriction.   Rather, it is an adjective that sets forth what it is that makes the particular person or thing of interest to the reader.   If one is interested in great baseball players it is significant to know that Willie Mays is in the Hall of Fame.   If one is interested with bankruptcy it is significant to know whether the company has actually filed bankruptcy.

D.      **The Third Circuit Favors The "Fixed" Approach.**

While this Court has serious doubts as to whether the dual entity theory holds water, it need not address the issue further because of the Third Circuit's holding in

*New York City Shoes* ("*NYC Shoes*").[20]   While the Circuit did not directly address the issue before the Court in this case, the Circuit's definition of the subsequent new value defense compels the conclusion that the "fixed" approach is correct.

In *NYC Shoes*, the Circuit held that the subsequent new value defense under section 547(c)(4) has three elements: (1) the creditor must have received a transfer that is otherwise voidable as a preference under section 547(b); (2) after receiving the preferential transfer, the preferred creditor must advance "new value" to the debtor on an unsecured basis; and (3) the debtor must not have fully compensated the creditor for the "new value" *as of the date that it filed its bankruptcy petition*.[21]   As recently as 2009, the Circuit has reiterated this holding[22] even though many courts outside of the Third Circuit drop the "as of the date that it filed its bankruptcy petition" language.[23]

The last clause clearly supports fixing the entirety of the preference analysis on the Petition Date.   The crux of the issue in this case relates to the timing of determining when the creditor has been compensated for its new value.   The clear implication of the

---

[20] *New York City Shoes, Inc. v. Bentley Int'l Inc.*, 880 F.2d 679 (3d Cir. 1989).

[21] *NYC Shoes*, 880 F.2d at 680.

[22] *Schubert v. Lucent Techs, Inc. (In re Winstar Comm'n., Inc.)*, 554 F.3d 382, 402 (3d Cir. 2009) ("This court has held that Section 547(c)(4) imposes three requirements...(3) 'the debtor must not have fully compensated the creditor for the new value **as of the date that it filed its bankruptcy petition**.'") (emphasis added).

[23] *Compare Hall v. Chrysler Credit Corp. (In re JKJ Chevrolet, Inc.)*, 412 F.3d 545 (4th Cir. 2005); *Jones Truck Lines, Inc. v. Cent. States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323 (8th Cir. 1997); *Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d 228 (9th Cir. 1995); *Laker v. Vallette (In re Matter of Toyota of Jefferson, Inc.)*, 14 F.3d 1088 (5th Cir. 1994) (all holding that the debtor may use the subsequent new value defense where the debtor has paid the new value-regardless of the petition date) **with** *Kroh Bros. Dev. Co. v. Continental Constr. Eng'r. (In re Kroh Bros.)*, 930 F.2d 648, 652 (8th Cir. 1991); *Charisma Inv. Co. v. Airport Sys., Inc., (In re Jet Florida Sys., Inc.)*, 841 F.2d 1082, 1083 (11th Cir. 1988); *In the Matter of Presco*tt, 805 F.2d 719, 731 (7th Cir. 1986) (all holding that in order to assert the subsequent new value defense the new value provided to the debtor must remain unpaid as of the petition date).

Circuit's inclusion of "*as of the date that it filed its bankruptcy petition*" is that subsequent provision or payment of new value does not affect the preference analysis even if the debtor completely compensates the creditor for its pre-petition claim.  This is consistent with the purpose of the preference law-to reduce damaging, pre-petition opt out behavior and to level the pre-bankruptcy playing field for all creditors.  Once the bankruptcy is filed the preference law becomes unnecessary.  The automatic stay steps in to stop the race to the assets and the supervision of the case by the court, among other things, ensures that similar claims receive similar treatment.[24]

## CONCLUSION

Applying Third Circuit law, the Court holds that the filing of the bankruptcy "fixes" the preference analysis as of the petition date.  Neither the post-petition provision of new value by the creditor nor the post-petition payment of unpaid, pre-petition new value affects the preference calculation.  The motion for summary judgment will be denied and an order will be issued.

---

[24] As this case illuminates, however, all unsecured claims may not be treated equally.  For example, one unsecured claim may be paid in full under a critical trade vendor order while the others are paid in part under a confirmed plan.  In a pre-petition, preference context the different treatment arises from the parties' behavior with some claimants receiving better treatment by winning the race to the debtor's assets.  But, in a post-petition scenario such as that before the Court, pre-petition claims cannot be paid unless approved by the Court.